## F. W. DUNTON v. T. A. SHARPE.

**Landlord and Tenant — Lease — Rent Notes.**

In a contract of lease of lands for a term of three years, notes for each year's rent being given, with a provision that in case of overflow from a river, lessee should be entitled to a credit on the notes for whatever damage may be done his crops by reason of such overflow, *Held*, that said notes were not given in purchase of a term of years, but to evidence the sum to become due each year, subject to diminution by reason of such overflow.

**Promissory Notes — Where Payable.**

In the absence of proof showing in what State rent notes for lease of lands were made and payable, the notes will be assumed to be payable in the State where the lands lie.

**Mortgages — Tenements and Hereditaments — Rents.**

A mortgage carrying an express grant of lands, with the provision "tenements, hereditaments, and appurtenances thereto pertaining," conveys the rents to the mortgagee as hereditaments.

In such case, the rents having passed to the mortgagee, they pass from him to a purchaser under foreclosure proceedings, and, as against the assignee of the rent notes who took them after the execution of the mortgage, such purchaser is entitled to them.

Several issues were made up and decided by the court in this case.

Riley Brothers & Baer instituted attachment against Mrs. Ella M. Reddick, and garnished Maynard & Yerger, seeking to bind whatever sum might be due by garnishees to debtor by reason of certain rent notes executed as stated below.

George T. Mitchell instituted similar proceedings against Mrs. Reddick and garnished Maynard & Yerger.

Garnishees answered, denying indebtedness to defendant at time of, and since, service of writ upon them. Also denied possession of any effects of defendant at time of, or since, service of writ; and alleged that they knew of no other person indebted to, or having effects of, defendant, at time of, or since, service of garnishment writ. Garnishees further answered that under the firm name of Maynard & Yerger, they had leased a certain plantation from Mrs. Reddick on December 23, 1882, for the years 1883, 1884, and 1885, and executed rent notes as follows: Four notes of $100 each for the year 1883; two notes for $250 each for

the year 1884, and three notes for $216.66 for the year 1885; the notes being due November 15th in each year. That the lease was duly recorded, which lease provided, *inter alia*, that any damage resulting to the place or crops by reason of overflow from the Mississippi river should be offset as against said rent notes; that the notes due November 15, 1883, were, long before the institution of the attachment suit, transferred to the Corbin Banking Company and paid; that one B. Richmond attached Mrs. Reddick in justice of the peace court in June, 1883, and recovered judgment against garnishees herein for $75, with stay of execution until the notes for 1884 should fall due; that on December 28, 1883, garnishees received notice by mail from L. R. Grimes of Memphis, Tenn., that he was the owner of one of the notes for the year 1884. Garnishees prayed that said Grimes be made to interplead with plaintiffs and asked compensation for answering.

By leave of court, garnishees filed an amended answer setting up that their lease contained the following stipulation:

" That in case said cleared land shall be overflowed from the Mississippi river during any year of said term, then said Maynard & Yerger may deduct from the rent of that year such damages from loss of crops as shall be adjudged proper." That the lands were overflowed during the year 1884 to their damage in the sum of not less than $250, which they claimed as an offset on the notes for the year 1884. Garnishees further answered that they had been garnished in the case of George T. Mitchell against Ella M. Reddick; that they had been notified that one F. W. Dunton claimed all the rent notes for the years 1884 and 1885 and that one F. A. Sharpe also claimed the rent notes for the year 1885. Garnishees alleged their inability to decide to whom said rent may be adjudged due on their said rent notes, and prayed that the matter be adjudicated by interpleader by and between Mitchell, Richmond, Dunton, Sharpe, and Wiley Brothers & Baer.

Maynard & Yerger filed an additional answer setting up that there was a chancery decree for a sale of the " Black Lake " place of record in Yalobusha county, Mississippi, for the sum of $250; that the same was obtained upon a claim against the estate of one Burke, of whom Ella M. Reddick was one of three heirs-at-law; that said Reddick, prior to the year 1879, she being in

possession of said place, purchased the one-third interest of S. P. Burke in said place; that on February 15, 1879, Mrs. Reddick gave general warranty deed to one-third of said "Black Lake" place to one Mary E. Hammett, who, upon default in payment of purchase money, lost possession of the property by a decree of the Chancery Court of Coahoma county that the said place be sold for the purchase money; and that garnishee Maynard purchased the place at commissioner's sale in 1882; that Mrs. Reddick was insolvent, and asked that the said claim of $250, which they alleged to be a lien on the said "Black Lake" place, be offset or recouped against the amount that may be found due by them to said Ella M. Reddick; that there was no other estate of the said Burke out of which the said decree for $250 could be made except the "Black Lake" place, and the Reddick place belonging to one Fields.

On the issue in the case of Riley Brothers & Baer v. E. M. Reddick, and F. W. Dunton v. F. A. Sharpe, the court (jury being waived by agreement) found the facts to be that:

On December 28, 1882, Ella M. Reddick leased certain lands to Maynard & Yerger for the years 1883, 1884, and 1885; that for the year 1885 lessees executed and delivered three notes for the sum of $216.66 each, due November 15, 1885; that the lease was filed for record on December 27, 1882; that on January 31, 1883, Ella M. Reddick executed to Sherwood, trustee, a trust deed upon the lands to secure certain indebtedness. The trust deed was filed for record February 6, 1883; that trustee's beneficiaries had notice of the lease at time of execution of trust deed; that on June 2, 1883, Mrs. Reddick assigned said notes to F. A. Sharpe for the sum of $552.60; that on June 2, 1884, Sherwood, trustee, sold the land to F. W. Dunton, who purchased at trustee's sale with notice of the assignment of the notes to Sharpe.

The court held that at the time of the execution of the trust deed, the lease for three years had been made, and that the trust deed conveyed only the reversion after the expiration of the lease.

The court further held that the transfer of the rent notes for the year 1885 having been made for valuable consideration prior to the purchase and sale under the trust deed, that F. W. Dunton became entitled only to the reversion and not to the rents.

On the issue joined between Riley Brothers & Baer v. F. A. Sharpe, the court found the facts, as to conveyances, dates, and

dates of filing for record, etc., to be the same as in the case just stated, and that the attachment was sued out on November 16, 1883, by Riley Brothers & Baer against Mrs. Ella M. Reddick for $161.80, and that on November 20, 1883, Maynard & Yerger were, under said attachment proceedings, garnished. The court held that the assignment of the notes having been made prior to the service of garnishment, for valuable consideration, that Maynard & Yerger, at time of garnishment service, were liable to Sharpe, assignee of said notes, and not to E. M. Reddick or the attaching creditors.

On issue joined between Maynard & Yerger v. F. A. Sharpe, the court found the facts to be as follows:

The "Lake Place" in Coahoma county, containing 1,254 acres, formerly belonged to Mrs. M. Burke, who devised the land to Mrs. Ella M. Reddick and two others; that Mrs. Reddick and S. Burke, under the will provisions and by death of the other devisee — his interest descending to them — became the owners of the place.

That S. Burke's interest was sold under execution against him and bought by one Goodbar; that Robert Reddick, Mrs. Reddick's husband, bought from Goodbar; that said Reddick and wife conveyed by general warranty 582 acres of this place to Mrs. Hammett, said part being the part now owned by Maynard & Yerger; that Mrs. Hammett failing to pay for the land, it was sold under decree of Chancery Court for the unpaid purchase money. Maynard & Yerger purchased at this sale; that Yerger afterward conveyed to Maynard; that Mrs. M. Burke died in Yalobusha county, and that a decree was rendered in said county about 1879 for $250, and that Maynard had not paid the $250, but claimed the right to set off or recoup the amount of this decree against the notes held by Sharpe.

The court held the claim of Maynard not a subject of recoupment, as it arose out of a separate and distinct transaction.

That said claim was not a subject of set-off, as it was not such a definite and ascertained claim as might be the subject of a cross-action; that to ascertain the amount due Maynard, the court would have to proceed to ascertain and apportion the amount due by him on the decree of $250 against the "Lake Place," which was outside the court's jurisdiction; that it did not appear that Maynard had been evicted or sustained any injury, and that an-

swer of Maynard set up no legal defense and that Maynard & Yerger were liable to Sharpe for the amount of the notes with interest from maturity.

On all these issues there was judgment accordingly. Motion for new trial was overruled, whereupon Dunton appealed to the Supreme Court.

APPEALED from Circuit Court, Coahoma county, W. S. FARRISH, Special Judge.

Reversed and judgment here, May 17, 1886.

*Attorney for appellant, Frank Johnston.*

*Attorneys for appellee, Calhoon & Green.*

Brief of Frank Johnston:

Dunton was the purchaser at the mortgage sale. And Sharpe is the assignee of the rent notes, falling due long after the date of the sale under the mortgage.

Rent is an incident to the reversion and must follow the nature of the land out of which it is reversed. Taylor on Landlord and Tenant, § 154. * * *

The common-law doctrine on this subject prevails extensively in the United States, and on a lease made prior to the mortgage, as the legal title vests at once by virtue of the mortgage, the mortgagee as assignee of the reversion is generally entitled, without any attornment, to collect rent from the date of the mortgage, after giving notice, subject only to the qualification that the rent has not already been in good faith paid to the mortgagor. * * *

In Bloodworth v. Stevens, 51 Miss. 481, Judge Simrall delivering the opinion of the court said: " The rule here is as at common law, that rent due at the time of the death of the lessor goes to his personal representatives, but rent which accrued afterward follows the reversion as an incident and goes to the heir." * * *.

A grant by mortgage, there being a pre-existing lease, transfers to the mortgagee the reversion to which the *rent* is incident. And on notice to the lessee the mortgagee will take all rents that become due, after the date of the conveyance and notice.

But, on the other hand, rent due and in arrear at the time of the mortgage does not pass by the conveyance, but is a mere chose in action.   *   *   *

At common law the mortgagee could enter at once or bring ejectment, or by notice acquire the right to take the rents. *   *   *

According to the Mississippi law of mortgages, the rents would thus pass with the mortgage of the reversion, subject only to the modifications made by our law, that the mortgagee could not enter before condition broken.

*Subject to these requirements the rents would go with the mortgage deed, as part of the security.*

In a word, it would be a conditional assignment of the rent as an incident to the reversion just as it is a conditional conveyance of the reversion intrinsically.   *   *   *

Brief of Calhoon & Green:

*   *   *   The point to be decided here, on the interpleader between Denton, the purchaser of the lands at the foreclosure sale, and Sharpe, the assignee of the rent notes, is, which of them is entitled to collect the amount of the assigned rent notes from Maynard & Yerger, the lessees.

Maynard & Yerger undoubtedly owned the three years' term, a mere chattel, by purchase from Mrs. Reddick for the notes given to her before any mortgage.  These notes were negotiable and she assigned them.   *   *   *

Suppose that Maynard & Yerger had paid the notes to Mrs. Reddick after the mortgage, but before its foreclosure; would they have been protected?  If yes, it follows that Sharpe is. Why would they not have been protected in payment to her?  By all the Mississippi authorities the mortgagor is the owner until condition broken.  If she was the owner she could receive payment and give quittance.

If she could receive and acquit, she could assign the notes, and when she assigned them for value, this was a payment by the lessees, so far as she was concerned.   *   *   *

It will be found that all the cases hold that the mortgagee cannot sue the mortgagor for rents paid by the tenant before foreclosure.

OPINION.— COOPER, C. J., delivered the opinion of the court:

The question whether one purchasing a term in lands and paying therefor in cash or negotiable paper upon which he might be held by any third person into whose hands it might come, may be liable also to the assignee of the reversion, is not presented by the record in this case. Looking to the contract of lease it is apparent that the notes were not given in the purchase of a term of years, but to evidence the sum to become due for each year for the rent of that year and subject to diminution by reason of any injury which might be suffered by the tenants in any year from an overflow of the demised lands. Whether the tenants would be protected as against the reversion, if it appeared that the notes given by him were executed or payable in a State in which commercial paper was governed by commercial law, is also a question not presented, since it does not appear in this case where the notes were made or payable, and in the absence of such proof we must assume them to have been payable in this State where the lands lie.

Aside from these inquiries which are suggested by counsel, it seems to us to be obvious that by the very terms of the mortgage executed by the landlord, the rents passed to the mortgagee, for by the mortgage not only is there an express grant of the lands but also of the "tenements, hereditaments, and appurtenances thereto pertaining," and rents are hereditaments. The rents having passed to the mortgagee they, of course, passed from him to the purchaser under the foreclosure proceedings, and as against the assignee of the notes who took them after the execution of the mortgage, such purchaser is entitled to them.

We desire to say we know no statute authorizing an interpleader in a court of law between two claimants to a fund not in court, but since the issue was made up and tried in the court below, without objection, and since none is made here, we dispose of the case on its merits.

The judgment of the court below will be reversed and a proper judgment entered here in favor of the appellant against Maynard & Yerger, the garnishees, with costs against Sharpe, the appellee.

*Reversed.*